UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORMAN WHITNEY, SR., ) <br> ) <br>     Plaintiff, ) <br> ) <br>   vs. ) <br> ) <br> THE CITY OF ST. LOUIS, MISSOURI ) <br> and SHELLEY SHARP, in her official ) <br> capacity as a Corrections Officer and ) <br> individually, ) <br> ) <br>     Defendants. ) | Case No. 4:16-CV-1372 (CEJ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the defendants' separate motions to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim for relief. Plaintiff has filed responses in opposition and the issues are fully briefed.

Plaintiff Norman Whitney, Sr., alleges that St. Louis City "jailing personnel" failed to adequately monitor his son, Norman Whitney, Jr., who died of asphyxiation in a cell at the City of St. Louis Justice Center. He filed suit in state court against correctional officer Shelley Sharp, in her official and individual capacities, and the City of St. Louis, asserting claims of wrongful death under Missouri law (§ 537.080 RSMo) and civil rights violations under 42 U.S.C. § 1983. The case was removed to this Court, with the defendant invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* 28 U.S.C. § 1443.

I.   Background[1]

On August 4, 2014, Norman Whitney, Jr., was arrested in the City of St. Louis. At the time of his arrest, his medical conditions included congestive heart failure, hypertension, diabetes mellitus, and heroin use. He was admitted to Saint Louis University Hospital in the custody of the St. Louis Sheriff's Office. When a deputy sheriff searched his bed for syringes, Whitney caused an altercation and attempted to escape.  According to an investigator's report, Whitney wanted to be killed by the deputy in lieu of returning to prison.  Whitney was evaluated and treated by psychiatric staff for suicidal ideation and his condition improved with treatment.

On August 8, 2014, Whitney was determined to be fit for confinement and was transported to the St. Louis City Justice Center. He was admitted to the medical unit because he was detoxing from heroin use, had underlying medical problems, and was a flight risk. The cell in which Whitney was placed had a small partition to ensure privacy for the occupant when using the toilet or shower. The bunk area was monitored by a video camera. Justice Center policy required a corrections officer to make a physical check whenever the cell's occupant was not visible on camera. Because there were no reports of suicidal ideation, depression or suicide attempts, Whitney was not on suicide watch and he was allowed to have bed sheets and clothing in his cell.

Whitney was said to be tolerating detox well and denied physical complaints. He was checked frequently and, when he was not visible on camera, a corrections

---

[1] The statement of background facts is based on allegations in the complaint and statements in the reports from the Office of the Medical Examiner, which plaintiff attached to and incorporated in the complaint. See Complaint, Count 1 at ¶6.

officer would make a physical check, walking to the cell and engaging Whitney in conversation. Most of the time when checked, Whitney was observed walking back and forth in his cell.

On the morning of August 10, 2014, defendant Shelley Sharp observed Whitney at 8:49 and 9:05 and recorded that he was pacing. At 9:14, she found him hanging from the shower head with a ligature made from his hospital gown. Following his death, an unnamed medical practitioner at the Justice Center came forward to report that Whitney had mentioned having suicidal ideation and a history of psychiatric medication. This information contradicted the answers Whitney gave to corrections personnel when they questioned him. There are no allegations in the complaint or statements in the Medical Examiner's report that this information was included in any records or otherwise conveyed to defendant Sharp.

II.   **Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in

3

support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Ordinarily, if the parties present, and the Court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(d). However, the Court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n. 4 (8th Cir. 2003). In addition, the Court may properly consider public records, including court records, on a motion to dismiss. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). Here, the Court has considered reports from the Office of the Medical Examiner which plaintiff attached to and incorporated in his complaint.

### III. Discussion

#### A. Defendant Sharp

In Count I, plaintiff alleges that defendant Sharp failed to adequately monitor Whitney, provide adequate medical care, and intervene to rescue him. This conduct, he claims, amounts to negligence under state law or, in the alternative, deliberate indifference under the Eighth and Fourteenth Amendments. Defendant

4

Sharp contends that plaintiff's § 1983 claim fails to plead adequate facts to establish that she was deliberately indifferent to Whitney's constitutional rights.[2]

Because Whitney was a pretrial detainee at the time of his suicide, plaintiff's claims are evaluated under the Fourteenth Amendment's due process clause. Vaughn v. Greene Cty., Ark., 438 F.3d 845, 850 (8th Cir. 2006). Whitney "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to." Yellow Horse v. Pennington Cnty., 225 F.3d 923, 927 (8th Cir. 2000). To succeed on a claim under the due process clause, plaintiff must show that defendant Sharp was deliberately indifferent to Whitney's rights. Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014). Establishing deliberate indifference requires a plaintiff to show that: (1) objectively, a substantial risk to the detainee's safety existed, and (2) subjectively, the defendants knew of but disregarded the substantial risk to the detainee's safety. Hartleib v. Carey, No. CV 15-3357 ADM/FLN, 2016 WL 6762401, at *2 (D. Minn. Nov. 15, 2016) (*citing* Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011)).

Plaintiff fails to allege facts establishing the second element in that there is no allegation that defendant Sharp knew that Whitney posed a substantial risk of suicide. Indeed, according to the Medical Examiner's report, which plaintiff incorporated by reference, plaintiff denied suicidal ideation and was therefore placed on medical watch instead of suicide watch. In light of his reliance on and incorporation of the report, plaintiff cannot rest on his conclusory allegation that Whitney was placed under observation for suicidal thoughts. *Complaint*, Count I, ¶

---

[2] Defendant Sharp does not move to dismiss plaintiff's state law claim.

10. At most, plaintiff alleges that Whitney told a health care worker that he had suicidal ideation, but plaintiff stops short of alleging that Sharp herself knew of this. As for plaintiff's claim that defendant Sharp failed to intervene to rescue Whitney, he again fails to allege that she knew that he was engaged in hanging himself in the shower area and disregarded him.

Defendant Sharp's motion to dismiss plaintiff's § 1983 claim will be granted.

### B.   Defendant City of St. Louis

In Count II, plaintiff alleges that the City of St. Louis failed to adopt a policy of constant surveillance for an inmate on suicide watch, in violation of federal regulation 28 C.F.R. § 552.42. He asserts that this failure amounts to deliberate indifference to Whitney's medical needs in violation of his rights under the Eighth and Fourteenth Amendments. He also claims that the City of St. Louis is vicariously liable for defendant Sharp's alleged negligence.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. Corwin v. City of Indep., Mo., 829 F.3d 695, 699–700 (8th Cir. 2016) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) and City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)). Because plaintiff fails to state a claim that defendant Sharp violated Whitney's constitutional rights, "there can be no . . . Monell liability on the part of . . . the City." Malone v. Hinman, No. 15-3465 at *10 (8th Cir. Feb. 7, 2017)  Id. (affirming grant of summary judgment on claims that City had a widespread custom of excessive force); *see also* Monell, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to

official municipal policy of some nature caused a constitutional tort."). The defendant City's motion to dismiss plaintiff's § 1983 claims for failure to state a claim for relief will be granted.

Because the Court will dismiss plaintiff's federal claims against the defendants pursuant to Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiff's state law claims.

\*\*\*\*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant Shelley Sharp to dismiss plaintiff's 42 U.S.C. § 1983 claims [Doc. # 19] is **granted.**

**IT IS FURTHER ORDERED** that the motion of defendant City of St. Louis to dismiss [Doc. # 7] is **granted**.

A separate order of dismissal will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2017.